**Michael A. LEE, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 02–3311.

United States Court of Appeals, Federal Circuit.

DECIDED: March 10, 2003.

Before LOURIE, GAJARSA, and LINN, Circuit Judges.

## DECISION

PER CURIAM.

Michael A. Lee appeals from the decision of the Merit Systems Protection Board dismissing his petition for lack of jurisdiction. *Lee v. Dep't of Defense,* No. CH–3443–02–0328–I–1 (MSPB Mar. 29, 2002). We *affirm.*

## DISCUSSION

Mr. Lee was employed by the Department of the Army in the Military Liaison Office ("MLO") in Brasilia, Brazil, from September 1996 to December 1998. According to Lee, he was housed in a building owned by the United States Embassy for his first six months in Brasilia. The Embassy then sold the building, and Lee was left to find his own housing. The rent for the house where he lived for the remainder of his tenure was $25,000.00 per year. Under the terms of his transportation contract, the government reimbursed him in advance for his rent and utilities for the period from February 1997 to February 1999. When he left Brasilia in December 1998, Lee repaid the unused $4,368.39 living quarters allowance ("LQA") that he would otherwise have used for his January and February 1999 rent.

The Defense Finance and Accounting Service ("DFAS") sent Lee a letter dated November 9, 2000, apparently erroneously informing him that the $53,386.12 LQA that had been advanced to him had been only partially "repaid," and that, as a result, he still owed the United States $20,200.12. According to the DFAS's letter, if Lee did not either repay the full amount or establish a repayment system within forty-five days, up to fifteen percent of his disposable pay would be withheld in each of his future pay periods until the

debt was repaid, with interest. The letter also stated:

> If you have any questions about the nature of the debt, please contact the civilian payroll office for an explanation. If, after hearing the civilian payroll office's explanation, you still believe that you do not owe the debt …, you may submit a written statement to the civilian payroll office. …
>
> If you acknowledge the validity of the debt but believe that you should not be required to repay it, you may submit a written request for waiver of the indebtedness. Guidance on waivers is enclosed.

Lee replied to the DFAS in a letter dated December 1, 2000, denying liability for the charges and evidently mistakenly requesting "waiver" of the erroneous claim.[1] On September 5, 2001, more than nine months after Lee had sent his letter, and after the government had already begun withholding a portion of Lee's wages in repayment of his alleged debt, the DFAS finally wrote back to Lee, denying his request for waiver. The DFAS's letter cryptically explained that "the Comptroller General ruled that any payment that is legal and proper when paid may not be considered for waiver. It has been determined that at the time you received the advance pay for LQA, payment was proper; therefore, the debt is not an erroneous payment subject to waiver under this Public Law [92–453]."

The DFAS also sent Lee a letter dated September 21, 2001, notifying him that the DFAS was "unaware" when it sent the November 2000 letter that Lee had actually repaid $4,368.39 in December 1998, and that his debt was accordingly being reduced from $20,200.12 to $15,831.73. The

1. It is unclear why Lee requested a "waiver," as it is apparent from the remainder of his December letter that he did not "acknowledge the validity of the debt."

letter also noted that $1,138.70 had been withheld from Lee's wages in the interim, leaving a remaining debt of $14,693.03.

In response to the DFAS's two September 2001 letters, Lee wrote a letter dated September 21, 2001, to the DFAS Remissions and Waivers Branch, asserting again that he actually did not owe any money at all; he explained that, since he had not received any LQA beyond what was used for rent and utilities, the DFAS's assertion that he owed $15,831.73 was apparently based on "the fact your accounting departments are in disarray."

In a letter dated December 19, 2001, the DFAS again denied Lee's "request for waiver of repayment." The letter stated that the criteria for waiving such claims for repayment under 5 U.S.C. § 5584 generally are "met by a finding that the claim arose from administrative error with no indication of fraud, fault, misrepresentation, or lack of good faith on the part of the claimant or any other person having an interest in obtaining a waiver of this claim." The letter then summarily concluded that Lee's debt "may not be considered for waiver" without any explanation or apparent analysis of Lee's case.

Lee appealed the DFAS's second denial to the Board. In addition to requesting reversal of the denial, Lee also asserted that the garnishment of his wages constituted "double jeopardy" by being contrary to the terms of a settlement of another, earlier dispute with the Army. In an Initial Decision dated March 29, 2002, an Administrative Judge ("AJ") dismissed Lee's appeal for lack of jurisdiction. *Lee,* slip op. at 1. The AJ noted, in particular, that 5 U.S.C. § 5584, which governs waiver of collection of erroneous overpayments, provides no right to appeal to the Board. *Id.* at 4. The AJ also noted that the earlier settlement agreement contained no provision explicitly barring collection of any

overpayment, and no such provision could be inferred from the agreement. *Id.* at 3. Moreover, the AJ found that that agreement had not been entered into the record for enforcement purposes; therefore, even if it had contained a provision barring collection of any overpayments, the Board nonetheless would have lacked authority to enforce that provision. *Id.* The AJ also considered several alternative theories under which Lee might have grounded jurisdiction in the Board, including by regarding the garnishment of his wages as a reduction in pay or as a personnel action covered by the Whistleblower Protection Act, and found those theories likewise unavailing. *Id.* at 4. The AJ then distinguished the present case from *Walker v. Department of the Army,* 90 M.S.P.R. 136 (2001), which arose out of a petition for enforcement of a Board decision reversing an appellant's separation from employment, on the ground that the present case does not involve a petition for enforcement. *Id.* at 4–5. Finally, the AJ pointed out that, under 5 U.S.C. § 5584(a), the Comptroller General has the authority to resolve disputes arising from erroneous payment of LQAs. Lee did not file a petition for review by the full Board, and the AJ's Initial Decision became the final decision of the Board. *See* 5 C.F.R. § 1201.113.

Lee timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2000). The scope of our appellate review in cases such as this is limited to whether the Board's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Phillips v. U.S. Postal Serv.,* 695 F.2d 1389, 1390 (Fed.Cir.1982).

We find nothing in the Board's dismissal of Lee's appeal that can be characterized as arbitrary, capricious, or otherwise not in accordance with the law. The Board's jurisdiction is not plenary, but is limited to those actions that are appealable to it by law, rule, or regulation. 5 U.S.C. § 7701. We know of no law, rule, or regulation that confers on the Board jurisdiction to review a denial of waiver of collection of overpayment of LQAs. Lee argues for the first time on appeal that the Board had jurisdiction under 5 C.F.R. § 1201.3(a)(6). That provision confers jurisdiction only over "determinations affecting the rights or interests of individuals or under the Civil Service Retirement System or the Federal Employees' Retirement System ['FERS']," however, and not over review of denial of waiver of collection of overpayments of LQAs. Although Lee argues that his retirement savings were affected as a result of his having reduced his FERS contribution for an approximately one-year period while a portion of his pay was being withheld, we find the connection too speculative to find jurisdiction on that basis.

In any event, we find appended to Lee's Reply Brief a letter to him, dated June 13, 2002, from Colonel William M. Landrum III, Acting Deputy Assistant Secretary of the Army (Financial Operations), informing him that the Army has reviewed the facts of his case, and has found no documentary evidence supporting the debt charged to him by the DFAS. The Army has accordingly requested that the DFAS reverse the debt and refund any amounts already collected from Lee's pay. While Lee has not withdrawn this appeal, it may be that it is moot.

Accordingly, we affirm, but not without regretting that Lee has had to go through so much trouble merely to recover from the government wages that were apparently improperly withheld as a result of the errors of the DFAS.